***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes. Based upon review of all of the competent evidence of record with reference to the errors assigned, the appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission upon reconsideration of the evidence REVERSES the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the plaintiff and the employer-defendant on March 6, 2003.
3. The defendant is insured by Builders Mutual.
4. The parties stipulated into evidence as Stipulated Exhibit 1A, plaintiff's medical records.
5. The parties stipulated into evidence as Stipulated Exhibit 1B, plaintiff's Recorded Statement.
6. The parties stipulated into evidence as Stipulated Exhibit 1C, all forms filed with the Industrial Commission.
7. The parties stipulated into evidence as Stipulated Exhibit 1D, defendants' answers to plaintiff's First Set of Interrogatories.
8. The parties stipulated into evidence as Stipulated Exhibit 2, a set of documents including time tickets and invoices of defendant-employer.
9. The parties also stipulated to an average weekly wage of $608.62 with a corresponding compensation rate of $405.77.
 ***********
Based upon all of the competent evidence and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was 45 years old and was the head electrician for defendant-employer. Plaintiff had worked in the electrical business for approximately 25 years, and he worked for defendant-employer for approximately nine years.
2. Defendant-employer is an electric company that performs residential and commercial electric work.
3. Plaintiff's job duties for defendant-employer involved all aspects of an electrician's work, including setting temporary electricity poles, responding to various types of electrical service calls, climbing ladders, setting up scaffolding, crawling in attics and crawl spaces, digging and trenching underground wires, lifting equipment or objects and material, lifting/bending/running various sorts of conduit pipe, wiring and installing fans, lights, breaker panels, and boxes, wiring complete gas stations inside and outside, drilling holes, cutting wood, cutting metal and pipe, threading pipe, and wiring and lifting/installing kitchen appliances.
4. The plaintiff testified at the hearing before the Deputy Commissioner that on or about March 6, 2003, he was performing an upgrade service at a residential home that required him to manually dig out an area so that new service could be set up. In the area in which the plaintiff had to dig, there was a crepe myrtle and a big tree in plaintiff's way with roots in the ground. The ground consisted of very hard clay and was uneven. There was also a gas line below the area in which the plaintiff was working.
5. The plaintiff further testified that there was a root along the foundation that was about two inches in diameter, another root below the first root and yet a third root which was much larger that the other two. Plaintiff testified that as he attempted to clear out the roots he had to use a shovel to spear them instead of a pickaxe because there was a gas line underneath. Plaintiff jabbed at the roots in the hard clay while the big tree kept jabbing him in the back. Plaintiff eventually trimmed the big tree to give himself more working room. The plaintiff continued to push, jab and chip away at the root and the hard clay with the shovel when he felt a pop in his right elbow.
6. At the hearing, before the Deputy Commissioner, the plaintiff testified that ordinarily he uses a shovel on the ground and he usually steps on it and digs with his feet, but in this case he could not do that because he was afraid he would rupture the gas line in the area.
7. Plaintiff testified that he was just trying to pick at the hard clay, but the clay in the ground was so hard that he had to jab using greater force to loosen it and the root to get it all moved out of the way in order to level the ground to clear the work area. Normally, the plaintiff does not shovel out the roots, he usually takes a pickaxe and chops them out.
8. Plaintiff was still pushing, chipping and jabbing at the root and clay with the shovel in the hard clay when he felt the pop in his arm.
9. Plaintiff initially sought treatment for his injury from Sand Hills Urgent Care, then from Pinehurst Surgical Clinic with Dr. Fedder. On December 15, 2003, plaintiff was referred to Mark E. Brenner, M.D., an orthopaedic surgeon who specializes in upper extremity orthopaedics. Dr. Brenner reported that plaintiff had some nerve neuritis involving the fourth and fifth fingers of his right hand, and elbow pain on the inside of the elbow. Dr. Brenner performed surgery on plaintiff's elbow on February 27, 2004. Plaintiff's surgery included a cubital tunnel release, excision of a loose bony fragment, and removal of lipomas.
10. Dr. Brenner stated that plaintiff would reach maximum medical improvement as of September 1, 2004, with a permanent partial disability of five percent of his right arm.
11. Dr. Brenner opined that plaintiff's elbow problems were casually related to his injury to his right arm at work on or about March 6, 2003.
12. Plaintiff testified that, as of the hearing date of June 21, 2004, he had not worked since September 2003.
13. At the hearing before the Deputy Commissioner, Jeff Clark, who owned Clark Electric, and Tim Reed, plaintiff's co-employee, both testified that digging in trenches and around trees, and using a shovel without using a foot on the shovel to dig is common. However, the plaintiff testified at the hearing that he not only had to dig in an uneven area, but he had to use his shovel instead of a pickaxe in a jabbing motion in the hard clay while a big tree kept jabbing him in the back in an area with a root along the foundation that was about two inches in diameter, another root below that root and yet a third root which was much larger than the other two and a gas line underneath.
14. The Full Commission has reviewed the evidence and finds plaintiff's testimony to be credible. The Full Commission gives greater weight to the testimony of the plaintiff over that of Jeff Clark and Tim Reed since the plaintiff was the participant of the event, giving rise to his right arm injury and due to plaintiff's almost 25 years experience in the electrical business.
15. The competent evidence in the record establishes that when the plaintiff had to use his shovel instead of a pickaxe in a jabbing motion to dig in the very hard clay while a big tree kept jabbing him in the back in order to get below and around an area with a root along the foundation that was about two inches in diameter with another root below that root and yet a third root which was much larger than the other two and a gas line underneath, the plaintiff experienced an unlooked for and untoward event that was unusual and an interruption of his normal work routine.
16. The circumstances of plaintiff's injury on or about March 6, 2003, constituted an interruption of his normal work routine and the introduction thereby of unusual conditions likely to result in unexpected circumstances.
17. The competent evidence in the record establishes that plaintiff sustained an injury by accident to his right arm arising out of and in the course of his employment with defendant.
18. Plaintiff's average weekly wage on the date of the incident that is the subject of this claim was $608.62, which yields a compensation rate of $405.77.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On or about March 6, 2003, plaintiff sustained an injury by accident to his right arm arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's injury by accident on or about March 6, 2003, he is entitled to be paid by the defendants temporary total disability compensation at the rate of $405.77 per week for the period beginning on the date in September of 2003 when the plaintiff last worked as reflected by the employer's company records until September 1, 2004. N.C. Gen. Stat. § 97-29.
3. As a result of plaintiff's injury by accident, the plaintiff is entitled to permanent partial disability compensation benefits for 12 weeks at a compensation rate of $405.77 per week for the 5% permanent partial disability rating to his right arm. N.C. Gen Stat. § 97-31.
4. The plaintiff is entitled to have defendants pay for all medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff-employee compensation benefits at the rate of $405.77 per week for the period beginning on the date in September of 2003 when the plaintiff last worked as reflected by the employer's company records and continuing until September 1, 2004. Compensation due which has accrued shall be paid to plaintiff-employee in a lump sum, subject to the attorney's fees hereinafter provided.
2. Subject to a reasonable attorney's fee herein approved, the defendants shall pay to plaintiff his permanent partial disability rating benefits for 12 weeks at a compensation rate of $405.77 per week for the 5% permanent partial disability rating assigned to his right arm. Compensation due which has accrued shall be paid to the plaintiff in a lump sum, subject to the attorney's fees hereinafter provided.
3. Defendants shall pay all medical expenses incurred or to be incurred, as a result of plaintiff's compensable injury by accident on or about March 6, 2003, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability.
4. A reasonable attorney's fee in the amount of twenty-five percent of the compensation awarded under Paragraphs 1 and 2 of the Award is hereby approved for plaintiff's counsel.
5. Defendants shall pay the costs.
This the ___ day of July 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER